UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS GRAZIANI,

                         Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        03-CV-437S(F)
COUNTY OF ERIE, ET AL.,

                         Defendants.

# I. INTRODUCTION

In this civil rights action brought under 42 U.S.C. § 1983, *pro se* Plaintiff Thomas

Graziani alleges that Defendants terminated his employment in violation of the First and

Fourteenth Amendments.  Presently before this Court is Defendants' Motion for Summary

Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Also before this

Court is Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.  Before this Court as well is Plaintiff's Motion to Change

Venue and Disqualify Counsel.  For the reasons discussed below, Plaintiff's motions are

denied and Defendants' motion is granted in its entirety.[1]

---

[1] In support of their motion, Defendants filed a Memorandum of Law; a Statement of Facts with Appendix; and the Declaration of Brian R. Liebenow, Esq. (Docket Nos. 68, 69, 70, 71, 73.)  In opposition to Plaintiff's Motion for Judgment on the Pleadings, Defendants filed a Reply Memorandum.  (Docket No. 81.)  In opposition to Plaintiff's Motion for Change of Venue and Disqualify Counsel Defendants filed a Response Memorandum.  (Docket No. 85.)

In support of his Motion for Judgment on the Pleadings and in opposition to Defendants' Motion for Summary Judgment, Plaintiff filed a Cross-Motion for Judgment on the Pleadings, consisting of Material Facts for Determination by a Jury with Exhibits, a Memorandum of Law, and a separate Memorandum of Law in Support of Motion for Judgment on the Pleadings, as well as the Declaration of Thomas N. Graziani.  (Docket Nos. 80, 82.)  In support of his Motion for Change of Venue and Disqualification of Counsel, Plaintiff filed a Notice of Motion and Motion for Change of Venue and Disqualification of Certain Legal Counsel.  (Docket No. 83.)

1

## II.  BACKGROUND

**A.     Facts**

Plaintiff is a former employee of the Erie County Sheriff's Department.  The County

of Erie, named as a defendant, is a municipal corporation organized under New York law.

(See Defendants' Statement of Facts with Appendix (Defs.' Statement), Docket Nos. 70,

71, ¶ 2.)   The Erie County Sheriff's Department, also named as defendant, is an

administrative unit of the Erie County Government.  (Id. at ¶ 3.) Defendant Patrick Gallivan

was the county's elected sheriff during the relevant periods of this dispute.  (Id. at ¶ 4.)

Finally, Defendant Timothy Howard was the county's appointed undersheriff.  (Id. at ¶ 5.)

Plaintiff began his employment with the Erie County Sheriff's Department on March

5, 1975.  (See id. at ¶ 1.)   Plaintiff was elected as vice president of the Erie County

Sheriff's Police Benevolent Association in 1999, and, shortly thereafter, became president

of the union after his predecessor's resignation. (Id. at ¶ 9.) Following his election, Plaintiff

requested leave to attend union-related activities on several occasions.  (Id. at ¶ 12.)

Following an incident in which Plaintiff was granted leave, but failed to report to work when

the union-related activity was canceled, the Erie County Sheriff's Department instituted a

policy requiring all requests for union-related leave to be accompanied by details of the

specific union event to be attended, as well as its location, date, and time.  (Id. at ¶ 14.)

Subsequently, Plaintiff continued requesting leave to attend union-related activities,

but failed to provide the additional information required by the Sheriff's Department.  (See

id. at ¶¶ 15, 23, 24.)  Defendants allege that Plaintiff was properly informed on each

occasion that his request was denied for lack of the requisite information.  (See id. at ¶¶

18, 22.)  Plaintiff does not deny being absent on the days for which he requested leave, but alleges that Defendants had authorized his leave or otherwise failed to warn Plaintiff that his leave was unauthorized.  (See Plaintiff's Material Facts for Determination by a Jury ("Pl.'s Statement"), Docket No. 80, 16.)

Shortly after the policy was instituted, Plaintiff failed to report for duty on May 12, 1999 after being denied leave for lack of the requisite information.  (Defs.' Statement ¶¶ 15-21.)  As a result, Plaintiff was placed on a ten day unpaid suspension.  (Id. at ¶ 21.) Following further instances of Plaintiff's alleged failure to report for duty on May 18 and May 31, 2000, the Sheriff's Department conducted an investigation into Plaintiff's infractions. (Id. at ¶ 26.) Undersheriff Howard conducted the investigation and interviewed Plaintiff.  (Id.)  Following the conclusion of this investigation, Plaintiff was suspended without pay for thirty days as a result of his unexcused absence on May 18, 2000, and discharged for insubordination and unbecoming conduct as a result of his unexcused absence on May 31, 2000.  (Id. at ¶¶ 27-28.)

**B.    Procedural History**

Plaintiff commenced this action on June 6, 2003, pursuant to 42 U.S.C. § 1983, alleging his constitutional rights were violated when his employment was terminated.  A series of discovery scheduling orders culminated in Plaintiff filing a motion to amend his Complaint on September 5, 2008.  (Docket No. 47.)  The motion was granted in part and denied in part.  Plaintiff filed his Amended Complaint on January 12, 2009.  (Docket No. 53.)  The Amended Complaint listed five causes of actions based on violations of the Defendant's right to free speech, freedom of association, and due process.  (Id.)

On June 30, 2010 Defendants filed a motion for summary judgment to dismiss

3

Plaintiff's claims in their entirety.  (Docket No. 68.)  Plaintiff missed a series of deadlines

in filing his response, but ultimately filed a cross motion for judgment on the pleadings.

(Docket No. 80.)   More recently, Plaintiff filed a Motion for a Change of Venue and

Disqualification of Certain Legal Counsel.  (Docket No. 83.)

## III.  DISCUSSION

**A.     Legal Standards**

**1.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted

where the "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Pro.

56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return

a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,

106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the

outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn

from the evidence must be "viewed in the light most favorable to the party opposing the

motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26

L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of

evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.

1991).  The function of the court is not "to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S.

at 249.

### 2.    Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard by which to decide a 12(c) motion is the same as for a 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  Bank of New York v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  The court will accept as true all factual allegations in the non-moving party's pleadings  and draw all reasonable inferences in favor of the party opposing the motion.  See id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010.)

### 3.    42 U.S.C. § 1983

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.

### B.    Plaintiff's Motion for Change of Venue and Disqualification of Counsel

At the outset, this Court addresses Plaintiff's motion for a change of venue and to

disqualify the Erie County Attorney's Office.  A district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice."  28 U.S.C. § 1404(a).  The primary goal of § 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

In determining whether the interests of justice and convenience support transfer, district courts evaluate nine factors: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative financial means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight afforded plaintiff's choice of forum; and (9) judicial economy and the interests of justice.  Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F.Supp.2d 282, 285-86 (S.D.N.Y. 2004).  Courts have broad discretion in making determinations of convenience under § 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.  D.H. Blair & Co., Inc. v Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

Plaintiff has provided no grounds on which this Court should grant a change of venue pursuant to 28 U.S.C. § 1404(a).  Furthermore, the parties and witnesses reside or are employed in the Buffalo area. Similarly, all events relevant to this dispute took place in the same region.  Consequently, Plaintiff's motion will be denied.

Plaintiff is a licensed attorney, proceeding *pro se*.  Again, in an abundance of caution, this Court will afford him every benefit accorded to non-attorney *pro se* litigants.

Read broadly, Plaintiff's concern that this Court's failure to *sua sponte* disqualify defense counsel may be the product of animus can also be construed as a request for recusal.

This District previously has denied motions for recusal that were based upon the assigned judge's issuance of rulings unfavorable to the plaintiff.  In affirming one such decision, the Second Circuit noted that "judges should recuse themselves only if their conduct in past or present proceedings demonstrates such 'deep-seated favoritism or antagonism as would make fair judgments impossible.'"  Yoonessi v. State Univ. Of new York (Buffalo), 9709592, 1998 U.S. App. LEXIS 24671, at *2 (Sept. 30, 1998) (*quoting* Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L. Ed. 2d 474 (1994)).

Here, Plaintiff does not point to any adverse ruling; rather, he objects to an alleged failure to act in the absence of any motion for relief.  Plaintiff has not raised any issue that would call into question this Court's ability to fairly adjudicate his claims, and his amorphous claim of "animus" is not sufficient to warrant relief.  Thus, to the extent his motion to change venue can be read as a motion for recusal, the motion is denied.

Plaintiff also asks this Court to disqualify the Erie County Attorney's Office on the basis that one of the attorneys in the Erie County Attorney's Office, Mr. Jeremy Colby, previously clerked for the late Judge Elfvin while this case was before that judge.  Plaintiff argues that the appearance of impropriety is sufficient to warrant disqualification.

Motions to disqualify counsel are subject to strict scrutiny.  Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009).  New York's Code of Professional Responsibility states that lawyers should "strive to avoid not only professional impropriety but also the appearance of impropriety."  N.Y. Code of Prof'l Responsibility EC 9-6.  However, "[b]ecause of the strong countervailing interest in the public's right to unfettered

choice of an attorney, the appearance of impropriety is usually insufficient, in and of itself, to support disqualification." Blue Cross & Blue Shield of N.J. v. Philip Morris, Inc., 53 F. Supp. 2d 338, 345 (E.D.N.Y. 1999).  When a conflict of interest is found, that conflict is ordinarily imputed to his firm "on the presumption that associated attorneys share client confidences."  Cohen v. Strouch, No. 10 Civ. 7828, 2011 WL 1143067, at *2 (S.D.N.Y. Mar. 24, 2011) (quoting Hempstead Video v. Incorporated Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005)) (internal quotations omitted).

Here, Mr. Jeremy Colby was not Plaintiff's counsel in a prior proceeding.  Rather he served as law clerk to the judge previously assigned this case.  Mr. Colby's affidavit states that he has had no involvement in any part of this case, and was, in fact, completely ignorant of it prior to Plaintiff's motion.  (Defendants' Declaration of Brian R. Liebenow in Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, Docket No. 81, Ex. A.)  In line with Mr. Colby's statement, Plaintiff does not allege any actual impropriety.  (Plaintiff's Notice of Motion and Motion for a Change of Venue and Disqualification of Certain Legal Counsel, Docket No. 83, 2.)  A review of the docket further reveals that between 2002 and 2005, the time during which Mr. Colby was a law clerk, the only activity on this case consisted of a series of scheduling and discovery orders.  At the time Mr. Colby ended his clerkship in 2005, the parties were still in the middle of discovery.  All substantive motions in this case, including Defendants' motion for summary judgment and Plaintiff's own motion for judgment on the pleadings, were filed almost five years *after* Mr. Colby ended his clerkship.  Plaintiff's amended complaint was not even before the Court until early 2009.  Given these significant gaps in time, the fact that this case is no longer pending before the same judge, and Mr. Colby's own affidavit, this Court concludes that disqualification is not warranted.

8

**C.      Plaintiff's Free Speech and Freedom of Association Claims**

Plaintiff's First and Fourth causes of action allege generally that Defendants violated his right to free speech and freedom of association.  (Amended Complaint ("Am. Comp."), Docket No. 53, ¶¶ 107-120, 184-197.)  "It is now well established that public employees do not check all of their First Amendment rights at the door upon accepting public employment."  Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (quoting Lewis v. Cowen, 165 F.3d 154, 158 (2d Cir. 1999)).  The standard under which an employee's free speech and freedom of association claims are resolved is the same.  Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004.)  A public employee alleging retaliatory action as a result of exercising his First Amendment rights bears the burden of showing: 1) that the speech was a matter of public concern, as opposed to a personal interest; 2) that the employee suffered an adverse employment action; and 3) that this adverse act was as a result of Plaintiff's speech.  Id.  Even if a plaintiff can show that the speech at issue dealt with a public concern, a government employer may nevertheless take action if its prediction that the speech will be disruptive is reasonable, the potential for disruption outweighs the speech's value, and the employer took the adverse employment action because of the potential disruption.  Johnson v. Rapice, No. 3:00CV1556, 2007 WL 1020750, at *1 (D. Conn. Mar. 30, 2007) (quoting Ganim, 342 F.3d at 113-14).

Plaintiff contends that he sought to engage in union activities, and that his employment was terminated in order to prevent him from doing so.  (See Am. Comp. ¶¶ 107-120, 184-197; Pl.'s Statement 4, 9.)  Assuming, without deciding, that Plaintiff's speech here was a matter of public concern, Plaintiff nevertheless fails to show that his termination was a result of his Union activities.  To the extent Defendants prevented or

interfered with Plaintiff's union activities, such interference was based on non-compliance with the policy requiring employees to provide the purpose, location, date, and time of the union activity along with any request for union leave.  (Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Defs.' Mem.), Docket No. 69, 12-13.)   Indeed, Plaintiff understood this policy and acted in compliance with it on a number of occasions.  (See Defs.' Statement, Ex. DD, 8-9; Defs.' Statement, Ex. BB, 10-11.)

Plaintiff responds that, regardless of what the policy required, Defendants lulled him into believing that his actions were permissible.  (Pl.'s Mem. at 1-12 ("Plaintiff was lead down the garden path thinking that everything was resolved and were [sic] moving forward like gentlemen.")  Plaintiff claims his dismissal on the basis of non-compliance with the policy was pretextual, and Defendants actually terminated him because of his union activities.  Unsurprisingly, Defendants dispute that Plaintiff was tricked into violating the policy.  This Court must consider the parties' submissions and the record to determine if summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Defendants, as the moving party, have presented a detailed timeline of the various events leading up to Plaintiff's termination, and have provided affidavits, letters to the Plaintiff, and the transcript of a conversation with Plaintiff in support.  These show that on May 5, 1999 Plaintiff did not report for duty, despite the fact that the union meeting for which he had been granted leave was canceled.  (Defs.' Statement, Ex. O, ¶¶ 3-5.) Plaintiff was put on notice that, from thereon, he would need to provide the specific event for which leave was requested, as well as the location, time, and date of said event.  (Id. at ¶ 5.)  On May 12, 1999 after Plaintiff  requested, and was denied, union leave, Plaintiff failed to report for duty in a timely manner and was suspended without pay for ten days.

(Id. at ¶¶ 6-10.)  Plaintiff did not challenge his suspension.  (Id. at ¶ 10.)  Following this incident, on May 18 and May 31, 2000, Plaintiff again requested leave, was denied, failed to report for duty, and was marked absent without leave.  (Id. at ¶¶ 13, 15.)  The penalty imposed for Plaintiff's absence on May 18 was 30 days suspension without pay, as a result of his prior 10 day suspension the previous year, and his penalty for the absence on May 31, 2000 was termination.  (Defs.' Statement ¶¶ 26-27.)  Both these penalties were given to Plaintiff on June 7, 2000.  (Id.)

Having properly supported its motion by presenting the grounds on which Plaintiff was terminated, the burden shifts to Plaintiff to set out specific facts showing a genuine issue of material fact concerning whether these grounds were pretextual.  See Connolly v. City of Rutland, Vt., No. 2:09-CV-183, 2011 WL 3739064, at *5 (D. Vt. Aug. 24, 2011). Ignoring the fact that Plaintiff has not submitted an affidavit recounting his version of events, Plaintiff points out that, a week prior to May 18, he had written up the work schedule and listed himself as absent for union-related activities.  (Pl.'s Statement 10-11.) Moreover, following the May 18, 2000 absence, Plaintiff was not disciplined for his actions, leading him to be absent May 31, 2000 under the belief that his absence was approved. (Id. at 12.)  Again, Plaintiff had marked himself as absent for union-related activities on the work schedule.  (Pl.'s Statement, Ex. 1.)

Considering the evidence in its entirety, Plaintiff's submissions do not establish a dispute as to a genuine issue of material fact.  Although Plaintiff may have written the work schedule to show that he would be absent for union-related activities on May 18 and May 31, he admits that he did not have the authority to authorize his own union leave and that any changes to the schedule required prior approval.  (Defs.' Statement, Ex. DD, 5.) Although he failed to see it because he did not check his mailbox for several days, Plaintiff

also received notice from the Department on May 19 denying his request for leave on May 31. (Id. at 6-7.) Furthermore, he had been previously disciplined for exactly this behavior. Finally, Plaintiff himself demonstrated his awareness of the policy, and the importance of following it.  Plaintiff had on previous occasions followed up with his supervisor to ensure that his leave would be granted.  (Defs.' Statement, Ex. BB, 10.)  Moreover, the Department had stressed the need for compliance with the policy and that failure to do so would result in the leave being denied.  One letter to Plaintiff by Chief Richard Donovan reminded Plaintiff "[o]nce again, [that] future requests should include not only the dates but the times of any meetings, seminars, etc."  (Defs.' Statement, Ex. T.)  Another letter to Plaintiff from Undersheriff Howard stated, "I have sent you numerous letters regarding the proper format for making Union Leave requests yet you continue to ignore those instructions . . . . You are hereby advised that unless you comply with our requirements for requesting Union Leave, no such leave will be approved."  (Id. at Ex. W.)

Although this Court is required to draw all factual inferences in favor of Plaintiff and take all factual assertions in the light most favorable to him, the evidence here shows that Plaintiff was on notice of the Department's policy, knew that it needed to be complied with, and had actually been disciplined for disobeying it.  Although Plaintiff may have believed his actions were reasonable and that the Department's policy was unnecessarily demanding, Plaintiff could not have reasonably believed that his actions did not violate the Department's policy or that he would not be disciplined as a consequence.  Because this Court finds that Plaintiff has not met his burden to show that Defendants' alleged grounds for termination were pretextual, and therefore cannot show that his termination was a result of his protected speech, Defendants' motion for summary judgment as to Plaintiff's First and Fourth causes of action will be granted.

D.     **Plaintiff's Due Process Claims**

Plaintiff's Second, Third, and Fifth causes of action allege generally that Plaintiff was terminated in violation of his right to due process.  (Am. Comp. ¶¶ 121-183, 198-209.)  The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Individuals with tenure, including Plaintiff, have a constitutionally-protected property right in their tenure status that cannot be deprived without due process.  See id.; DeMichele v. Greenburgh Cent. Sch. Dist. No. 7, 167 F.3d 784, 789 (2d Cir. 1999) (public employee who can be discharged only for cause has a constitutionally-protected property interest in her tenure and cannot be fired without due process).

The issue here is whether Plaintiff's tenure rights were violated because he was not afforded a pre-termination hearing.  Tenured employees are entitled to a hearing prior to termination.  Todaro v. Norat, 112 F.3d 598, 599 (2d Cir. 1997) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  "The essential requirements of due process . . . are notice and an opportunity to respond."  Reed v. Medford Fire Dept., Inc., No. 10-CV-737, 2011 WL 3555821, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting Loudermill, 470 U.S. at 546.)  These requirements are satisfied where the government provides notice and a limited opportunity to respond prior to termination, and a full adversarial proceeding after termination.  Id. (quoting Locurto v. Safir, 264 F.3d 154,

171 (2d Cir. 2001).  The notice provided must inform an employee of the charges against him and provide an explanation of the employer's evidence, and the employee must be given the opportunity to provide his version of events.  <u>Otero v. Bridgeport Hous. Auth.</u>, 297 F.3d 142, 151 (2d cir. 2002) (quoting <u>Loudermill</u>, 470 U.S. at 546).  The pre-termination hearing need not resolve the charges, but only ensure that "there are reasonable grounds to find the charges against an employee [] true."  <u>Reed</u>, 2011 WL 3555821, at *14 (quoting <u>Locurto</u>, 264 F.3d at 173-74 (2d Cir. 2001).

Here, Defendants argue that all procedural due process protections were satisfied in a meeting between Undersheriff Howard and Plaintiff.  (Defs.' Mem. 17-18.)  Defendants' support their argument through Howard's affidavit and that meeting's transcript.  (Defs. Statement, Ex. V ¶¶ 22-23; Ex. DD, 1.)  Plaintiff responds that there were no allegations of misconduct, that he was not informed of the right to bring a union official, nor that there was a hearing sufficient to satisfy the requirements under <u>Loudermill</u>.  (Pl.'s Statement 6.)  This Court must consider the contents of the meeting with Undersheriff Howard to evaluate whether it satisfied the minimal requirements of notice and opportunity to respond.

The meeting, the transcript of which Plaintiff identified during his deposition, shows that the meeting's purpose was "to discuss [Plaintiff's] conduct on May 18th and May 31st."  (Defs' Statement, Ex. DD, 1.)  Plaintiff was made aware of the charges against him when Undersheriff Howard informed him that it appeared that Plaintiff "did not report for duty on either of those dates and I am not aware of any type of leave having been granted for you on those dates."  (<u>Id.</u>)  Plaintiff was also warned that failure to answer questions "could result in an *additional* administrative action."  (<u>Id.</u>) (emphasis added).  Finally, Howard described the meeting as a "disciplinary action."  (<u>Id.</u> at 17.)  Similar notice has been deemed sufficient in a variety of contexts.  <u>See, e.g.</u>, <u>Saltarella v. Town of Enfield</u>, 427 F.

14

Supp. 2d 62, 74 (D. Conn. 2006) (letter notifying Plaintiff that subject of hearing was false information in police report and false statements to superior officer gave sufficient notice); West v. Grand County, 967 F.2d 362 368 (10th Cir. 1992) ("[B]rief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of Loudermill.").  Although Plaintiff may have wished for the opportunity to involve witnesses in this proceeding, that is not a requirement under Loudermill.  See Otero, 297 F.3d at 151 (2d cir. 2002).

The same transcript shows that Undersheriff Howard went through the evidence with Plaintiff.  First, Howard stated that he had no evidence that Plaintiff had received leave for the periods of absence on May 18 and May 31, 2000.  (Defs,' Statement, Ex. DD, 1.)  Next, Howard established, through the Plaintiff's responses to his questions, that Plaintiff had not been granted leave on those days.  Howard's questions also yielded that Plaintiff was aware that he had not received union leave and that, on one of the days in question, Plaintiff engaged in lobbying, an activity not covered under the provisions permitting an employee to take union leave.  (Id. at 4.)  Considering Plaintiff's responses and Undersheriff Howard's statements concerning Plaintiff's unexcused absences this Court finds that Plaintiff was provided with an explanation of the Department's evidence.  See Schmidt v. Creedon, 639 F.3d 587, 599 (3rd Cir. 2011) (inspector's statement provided sufficient notice of grounds for suspension even where no details of urinalysis test or pending formal charges).

Finally, Plaintiff had the opportunity to respond throughout the meeting, as well as at its conclusion.  Undersheriff Howard specifically asked Plaintiff, "Are there any additional explanations you would like to make regarding your conduct on May 18th or May 31st?"  (Id. at 16.)  Plaintiff took advantage of this opportunity, by expressing his belief that the

absences were remedied through the use of personal time.  (Id.)

On review of the meeting's transcript, this Court concludes that Plaintiff received adequate notice, was explained the evidence against him, and had the opportunity to respond, satisfying his pre-termination due process rights.

This Court also concludes that Plaintiff received an adequate post-termination hearing.  Plaintiff was entitled to a full adversarial proceeding post-termination, provided he availed himself of such.  Locurto, 264 F.3d at 171.  Here, Plaintiff did take advantage of the Department's grievance procedure and actually engaged in an arbitration lasting four days.  (Defs.' Statement, Ex. BB.)  The arbitrator in that proceeding made factual findings and, in a reasoned opinion, upheld Plaintiff's termination.  (Id. at 15-17.)  Under these circumstances, Plaintiff's post-termination due process rights were satisfied.  See generally O'Connor v. Pierson, 426 F.3d 187, 198 (2d Cir. 2005) (noting that grievance procedures mandated by collective bargaining agreements are routinely held to provide sufficient process).[2]

Consequently, Defendants' motion for summary judgment on Plaintiff's Second, Third, and Fifth causes of action will be granted.

## E.  Defendants' Remaining Arguments

Defendants also argue that the Sheriff's Department is not a separate legal entity subject to suit, Plaintiff cannot establish liability with regards to the County and Sheriff

---

[2]Plaintiff makes a variety of additional allegations, including that Undersheriff Howard lacked the authority to terminate Plaintiff, that he "suffered a complete failure of due process" as a result of Undersheriff Howard's failure to learn the Department's operations, and that the County Director of Labor Relations with whom Plaintiff and Undersheriff Howard met, was biased and stood to benefit from Plaintiff's termination.  (See Am. Comp.)  Because Plaintiff has not presented this Court with submissions substantiating any of these allegations, it cannot find them sufficient to defeat Defendants' motion for summary judgment.

Gallivan because he failed to allege a municipal policy or custom, and qualified immunity should attach to the actions of Sheriff Gallivan and Undersheriff Howard.  Because the Court grants Defendants' motion for summary judgment on the merits, it need not consider these further arguments.

**F.     Plaintiff's Motion for Judgment on the Pleadings**

Plaintiff cross-moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  A court considering such a motion must accept all factual allegations of the non-moving party and draw all reasonable inferences in that party's favor.   Bank of New York, 607 F.3d at 922.  Having already determined that, even if the evidence is viewed in the light most favorable to Plaintiff, Defendants' motion for summary judgment should be granted, this Court need not repeat the reasons for which Plaintiff's motion for judgment on the pleadings will be denied.


## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted.  Plaintiff's motion for Judgment on the Pleadings is denied.  Furthermore, Plaintiff's motion to change venue and disqualify counsel is also denied.


## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 68) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 80)

is DENIED.

FURTHER, that Plaintiff's Motion for Change of Venue (Docket No. 83) is DENIED.

FURTHER, that Plaintiff's Motion to Disqualify Counsel (Docket No. 83) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.


SO ORDERED.


Dated:   September 2, 2011
            Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
